## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

J.I. et al.,

    **Plaintiffs,**

**v.**

**BARROW COUNTY BOARD OF
EDUCATION et al,**

    **Defendants.**

**CIVIL ACTION FILE**

**No. 2:20-cv-00087-SCJ**

## ORDER

This matter is before the Court primarily on Plaintiffs'[1] Motion for Leave to File First Amended Complaint (Doc. No. [39]).[2] Defendants have responded in opposition (Doc. Nos. [42]; [44]), and Plaintiffs replied (Doc. Nos. [49]; 50).

---

[1] Plaintiff J.I., initially proceeding under a pseudonym, was the sole plaintiff in the first Complaint. Doc. No. [1]. The First Amended Complaint, however, added J.I.'s mother, Gail Isaacs, as another plaintiff and identified J.I. as Jasmine Isaacs. Doc. No. [28]. While this Order concerns whether the Court will allow the First Amended Complaint to be the operative complaint—and in effect whether there will be one or two plaintiffs in this action—the Court refers to plural "Plaintiffs" for clarity unless otherwise noted.

[2] As discussed below, the Court also addresses the pending motions to strike (Doc. Nos. [30]; [33]) the First Amended Complaint as filed at Doc. No. [28].

## I.   BACKGROUND

Plaintiff J.I. first filed this lawsuit on March 27, 2020, asserting several claims stemming from an October 7, 2016 incident in which she alleges that she was sexually assaulted by another student, "C.C.," at Apalachee High School. Doc. No. [1]. On August 6, 2020, the Parties filed a Joint Preliminary Report and Discovery Plan, in which J.I. indicated she would "be filing an Amended Complaint," and in which the Parties stated that "Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." Doc. No. [13], 5. Thus, the deadline to file amendments to the pleadings without Court permission was September 5, 2020. See id. The Court's Scheduling Order approved this timeline. Doc. No. [24].

On August 12, 2020, the Parties filed a joint motion and consent order. Doc. Nos. [22]; [22-1]. The motion stated that "Plaintiff [would] be filing an Amended Complaint by September 8, 2020." Doc. No. [22], 2.[3] Otherwise, the motion

_____

[3] As stated above, the deadline to file amendments to the pleadings without the Court's permission was September 5, 2020. Plaintiffs ultimately filed the amended complaint on September 11, 2020, which undoubtedly was late. Exactly how many days late, however, is a point the Parties implicitly contest. Defendants repeatedly state that the amended

sought more time for Defendants to respond, and the proposed consent order concerned only Defendants' requested extension. Id.; Doc. No. [22-1]. The Court granted the motion and filed the consent order. Doc. No. [23].

On September 11, 2020, Plaintiffs filed the First Amended Complaint (Doc. No. [27]), a corrected version of which was refiled three days later (Doc. No. [28]). The First Amended Complaint added Gail Isaacs as a plaintiff, identified Plaintiff "J.I." as Jasmine Isaacs, added several Defendants,[4] and added several claims. See generally Doc. No. [28]. On September 24, 2020, a group of Defendants associated with the Barrow County School System (the "Barrow Defendants")

_____

complaint was supposed to be filed by no later than September 5 and was thus at least six days late. See Doc. Nos. [30-1], 2; [43], 4. Plaintiffs, on the other hand, argue that September 8 was the deadline, which was contemplated in the earlier-filed joint motion. Doc. No. [38], 3. First, to be clear, while the joint motion mentioned the September 8 date, the consent order itself did not explicitly contemplate that date. See Doc. No. [23]. In any event, that issue is immaterial because, under Federal Rule of Civil Procedure 6(a), Plaintiffs are correct that the deadline to file the amended pleading was effectively September 8. Rule 6(a) states that, for computing time periods provided in a court order, when the period is stated in days, the Court is to "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." September 5, 2020 was a Saturday, and Monday September 7, 2020 was Labor Day, which is a legal holiday. Thus, September 8, 2020 was indeed the deadline under Rule 6. Accordingly, the Court determines that the amended complaint was filed three, not six, days late.

4   One new Defendant is Clayton Crowe, the individual who allegedly assaulted Plaintiff Jasmine Isaacs and who earlier had been identified as "C.C." Doc. No. [28].

moved to strike the amended complaint, arguing that Plaintiffs did not timely file it or seek the Court's permission to file out of time or add Gail Isaacs as a plaintiff. Doc. No. [30-1], 2–3. The Barrow Defendants also argue that Plaintiffs' added claims and attempt to add certain Defendants fail as a matter of law. Id. at 3–5. And on September 28, 2020, Defendants Keith B. Crowe, Tonya R. Crowe, and Clayton Crowe (the "Crowe Defendants") also moved to strike the amended complaint. Doc. No. [33]. Pages appear to be missing from this motion, but the Court gathers that the Crowe Defendants move to strike only insofar as Plaintiffs sought to add Gail Isaacs as a plaintiff. See id. at 2–3. The Parties subsequently filed response and reply briefs regarding these motions to strike. Doc. Nos. [38]; [40]; [43].

In response to the Barrow Defendants' motion to strike, Plaintiffs argued that the Court should deem the amended complaint to have been "properly introduced" because leave to file it would have been granted if sought. Doc. No. [38], 4–5. And to the extent the Court were to find that Plaintiffs did not timely file the amended complaint, Plaintiffs attached to their response filing a Motion

for Leave to File Out of Time Amended Complaint. Doc. Nos. [38], 5; [38-1].[5]

Plaintiffs also separately filed that Motion for Leave on the docket, arguing that allowing leave to file the amended complaint is appropriate under Federal Rule of Civil Procedure 15. Doc. No. [39].[6] Response and reply briefs followed. Doc. Nos. [42]; [44]; [49]; [50]. The Court addresses those arguments below.

## II.    LEGAL STANDARD

"[I]n civil cases, a district court must issue a scheduling order in which it limits the time to amend the pleadings, and once a scheduling order is entered, a party must demonstrate good cause [under Rule 16(b)] for seeking leave to

---

[5] Courts typically disfavor and even ignore motions filed only as attachments to responses or other filings. See, e.g., Matthiesen v. Matthiesen, No. 16-20360-CIV-GOODMAN, 2017 WL 10776715, at *2 (S.D. Fla. June 6, 2017) ("Submitting the motion as an exhibit is not equivalent to filing it as a separate motion."); Fed. Home Loan Mortg. Corp. v. Gonzalez, No. 1:13-CV-02100-AWI-JL, 2015 WL 2358444, at *1 (E.D. Cal. May 15, 2015) (stating that the plaintiff "erroneously filed [a] motion as an attachment" to another filing and warning that the motion "should have been docketed separately"); Kimberly-Clark Corp. v. Cardinal Health 200, LLC, No. 1:10-CV-0034-CAP, 2012 WL 12871823, at *4 (N.D. Ga. Sept. 7, 2012). Here, however, Plaintiffs also filed the motion separately (Doc. No. [38]), so the Court considers that motion rather than the attachment to Plaintiffs' response filing.

[6] Because this motion seeks leave to file the amended complaint that is already on the docket (compare Doc. No. [28] with Doc. No. [39-1], which are the same amended complaint), the Court treats Plaintiffs' filing as a retroactive motion for leave to file the amended complaint. See George & Co. LLC v. Cardinal Indus., Inc., No. 218CV154FTM38MRM, 2019 WL 7423510, at *1 (M.D. Fla. Aug. 8, 2019).

amend its complaint after the deadline." Jackson v. United Parcel Serv., Inc., 593

F. App'x 871, 875 (11th Cir. 2014) (internal citations omitted) (citing Fed. R. Civ.

P. 16(b)(3)(A), Fed. R. Civ. P. 16(b)(4), and S. Grouts & Mortars, Inc. v. 3M Co.,

575 F.3d 1235, 1241 (11th Cir. 2009)); see also Fed. R. Civ. P. 16(b)(4) (providing

that the schedule set by a court's scheduling order "may be modified only for

good cause and with the judge's consent"). This "good cause" standard precludes

modification of the scheduling order if the party was not diligent in seeking the

extension. See Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1232

(11th Cir. 2008); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998);

see also Schmidt v. APAC Mid-S., Inc., No. 4:19-CV-0027-HLM, 2019 WL 9620219,

at *3 (N.D. Ga. Oct. 29, 2019) (finding no good cause when the party seeking to

amend had access to the underlying information but "did not follow up on" that

information and thereby "waived any arguments justifying" his delay).

Only when the movant first demonstrates good cause under Rule 16(b)

may the court consider the amendment's propriety under Rule 15(a). Bowers v.

Am. Heart Ass'n, 513 F. Supp. 2d 1364, 1367 (N.D. Ga. 2007); see Fed. R. Civ. P.

15(a)(2), 16(b). Under Rule 15(a), a "court should freely give leave" to amend

pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny

leave to amend only with substantial reason, such as undue delay, futility, bad faith, or undue prejudice to the non-movant. <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1319 (11th Cir. 1999) (citing <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962)).

An amended complaint is futile if the claims, as amended, would be subject to dismissal as a matter of law. <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1263 (11th Cir. 2004). The Eleventh Circuit has explained that a proposed amended complaint is subject to dismissal as a matter of law if it fails to state a claim or fails to correct the deficiencies in the original complaint. <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1255 (11th Cir. 2008). A complaint has failed to state a claim if the facts as pled do not state a claim for relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 555 U.S. 662, 687 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 561–62, 570 (2007). To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." <u>Twombly</u>, 550 U.S. at 556. "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every

7

element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." <u>Twombly</u>, 550 U.S. at 563 n.8.

## III.   ANALYSIS

To start, the Court observes that the briefing regarding the motions to strike and the motion for leave to amend overlap substantially, especially with respect to whether the Court should permit the amended complaint. While the Court primarily discusses the motion for leave to amend in this order, it draws on relevant arguments from the motion-to-strike briefs. The Court now analyzes the motion for leave to amend under Rule 16(b) and Rule 15(a).

### A.   <u>Plaintiffs Have Not Shown Good Cause Under Rule 16(b)</u>

First, while the Parties' arguments regarding Rule 15 are relevant, Rule 15 is not the only rule implicated here. The Court's Scheduling Order set the

8

deadline to file an amended pleading. As stated above, the Court finds that Plaintiffs filed the amended complaint three days after that deadline and then moved for retroactive leave to amend about a month later. Because Plaintiffs attempted to file the amended complaint *after* the deadline set by the Court's Scheduling Order, Federal Rule of Civil Procedure 16(b) applies. See Jackson, 593 F. App'x at 875. Because Rule 16(b) applies, Plaintiffs must show good cause for the Court to grant leave to amend after the deadline set by the Scheduling Order. Gibson v. Tr. Tx. Bank, S.S.B., No. 316CV00186TCBRGV, 2017 WL 6994575, at *4 (N.D. Ga. Sept. 19, 2017) ("Because plaintiffs' motion for leave to amend was filed after the expiration of the thirty-day period allotted in the Joint Preliminary Report and Discovery Plan, plaintiffs must show good cause under Rule 16(b) for permitting the delayed amendment" (quotation and citation omitted)).[7] This good cause standard is more difficult to satisfy than Rule 15's more generous "freely given" standard. Id.

Not once do Plaintiffs mention "good cause" in their briefing. Nor can the Court infer good cause from the arguments Plaintiffs present. Plaintiffs first

---

[7] And whereas Rule 15(a) considers "*undue* delay" rather than mere delay, Rule 16(b) is not as flexible—late is late, even if only three days late.

9

argue that they got consent from the Crowe Defendants and sought consent from the Barrow Defendants, to which Plaintiffs received no response. Doc. Nos. [38], 5; [39], 4. Ignoring whether the Barrow Defendants' non-response reasonably could be construed as their consent, Rule 16(b)(4) provides that the pertinent deadline can be "modified only for good cause **and with the *judge's* consent**." Thus, whether Plaintiffs received consent from Defendants was irrelevant at the time they filed the amended complaint and remains irrelevant now—it is the Court's consent that Plaintiffs must obtain. And whatever consent Plaintiffs received from Defendants does not constitute good cause.

To show good cause, Plaintiffs must provide some explanation of *why* they could not timely file the amended complaint. They make no such showing. Instead, they argue why allowing amendment would not delay or cause prejudice; for example, they argue that this is only the first amended complaint, that the amended complaint was filed only three days late, and that Defendants knew or were on notice of the new allegations. See Doc. Nos. [38], 5–6; [39], 4. Those arguments may relate to Rule 15, but they do not show good cause.

Accordingly, the Court finds that Plaintiffs have failed to show good cause for leave to amend under Rule 16(b). Thus, Plaintiffs' Motion for Leave to File

First Amended Complaint (Doc. No. [39]) is due to be denied. Although the Court denies Plaintiffs' motion under Rule 16(b), the Court will undertake a Rule 15(a) analysis as well.

### B.   Plaintiffs' Motion Also Fails Under Rule 15(a)

As an initial matter, the Court agrees with Plaintiffs that they filed and/or moved to file the amended complaint sufficiently early in this litigation to avoid undue delay or prejudice under Rule 15(a). Thus, the Court's analysis focuses on whether Plaintiffs' new claims and attempts to add parties are futile.

### 1.   Loss of Consortium Claims

The amended complaint attempts to append loss of consortium claims to most of the specific claims for relief. Doc. No. [28], ¶¶ 75, 85, 93, 99, 107, 115, 120, 127, 138, 149, 161. These claims relate only to Plaintiff Gail Isaacs. Id. As the Barrow Defendants argue (Doc. No. [30-1], 3), loss of consortium claims under Georgia law can emanate only from a marital relationship and thus cannot derive from a parent-child relationship. See Bennett v. Ocwen Loan Servicing, LLC, No. 213CV00243WCOJCF, 2014 WL 12860644, at *15 (N.D. Ga. May 13, 2014), report and recommendation adopted, No. 2:13-CV-243-WCO-JCF, 2014 WL 12861144 (N.D. Ga. Aug. 12, 2014); W.J. Bremer Co. v. Graham, 169 Ga. App. 115, 116, 312

S.E.2d 806, 808 (1983). Also, Plaintiffs have abandoned these claims. Doc. No. [50],

9. Thus, the loss of consortium claims are futile under Rule 15(a).

### 2.   *Severe Emotional Distress Claims*

The amended complaint attempts to append additional "severe emotional

distress" claims to most of the specific claims for relief. Doc. No. [28], ¶¶ 75, 85,

93, 99, 107, 115, 120, 127, 138, 149, 161.[8] The cited claims relate only to Plaintiff

Gail Isaacs. Id.

The Barrow Defendants argue that a parent cannot make an emotional

distress claim arising from a non-fatal injury to a child. Doc. No. [30-1], 3. As an

initial response, Plaintiffs made arguments concerning their claim for intentional

infliction of emotional distress, but they did not appear to defend their broader

"severe emotional distress" claims (see Doc. No. [38], 6–7), which the Barrow

Defendants construed as an abandonment of these claims (Doc. No. [43], 5–6).

But in a later reply brief concerning the motion to amend, Plaintiffs stated that

they had not abandoned the "severe emotional distress claims." Doc. No. [50], 9.

───────────────

[8]  To be clear, these claims do not appear to be standalone intentional or negligent
infliction of emotional distress claims. Instead, the language is incorporated into various
counts, and it states that Defendants' actions have caused Plaintiff Gail Isaacs to suffer
"severe emotional distress." E.g., Doc. No. [28], ¶ 115.

Again, however, Plaintiffs' argument focused only on the separate, standalone intentional infliction of emotional distress claim, not the more general and repeated "severe emotional distress" claims found in several of the amended complaint's counts. See id.

First, the Court finds that Plaintiffs did not defend or support these "severe emotional distress" claims. Second, the Court agrees with the Barrow Defendants' argument, which relies on McCunney v. Clary, 259 Ga. App. 260, 576 S.E.2d 635 (2003). There, the Court of Appeals of Georgia found that emotional distress claims stemming from the parent-child relationship and not involving both the parent and child being injured are confined to instances in which the parent witnessed the child's suffering and *death*. Id. at 261–62, 576 S.E.2d at 636–37. The Court of Appeals did not expand emotional distress claims to witnessing the non-fatal injury and suffering of a child. See id. Further, while the claim directly at issue in that case was a negligent infliction of emotional distress claim, the Court of Appeals broadly referred to the ability "to recover for . . . emotional distress." Id. at 261, 576 S.E.2d at 636. Plaintiffs' case does not involve the death of a child. It does not even involve a parent having witnessed the injury of a child. Georgia

13

law does not support Plaintiff Gail Isaacs' "severe emotional distress" claims, and the Court finds them to be futile under Rule 15(a).

### 3. Addition of Claim for Intentional Infliction of Emotional Distress Against Barrow Defendants

The amended complaint seeks to add an intentional infliction of emotional distress ("IIED") claim against the following individual Barrow Defendants: Dr. Chris McMichael, Jennifer Martin, and Angela Boyd. Doc. No. [28], ¶¶ 150–161. Plaintiffs allege that these Barrow Defendants "intentionally" breached their duties to supervise or "monitor students who pose a real and immediate danger to their fellow students and to protect all students from harassment, intimidation and sexual assault." Id., ¶¶ 151–152. Plaintiffs claim that this breach caused: (1) Plaintiff Jasmine Isaacs to suffer a physical injury and severe emotional distress; and (2) Plaintiff Gail Isaacs to suffer severe emotional distress. Id., ¶¶ 160–161.

The Barrow Defendants argue that official immunity applies to the named Defendants and bars this claim because supervising students is a discretionary function, and the amended complaint does not plead the type of conduct that would strip these individuals of official immunity. Doc. Nos. [30-1], 4–5; [44], 9–10. In their initial response, Plaintiffs recited the elements for an IIED claim, discussed a Georgia IIED case, and did not respond to the Barrow Defendants'

14

official immunity argument. Doc. No. [38], 6–7. The Barrow Defendants replied

that the IIED claim also fails as to Gail Isaacs because she did not make a direct

claim for emotional distress based on conduct directed at her — instead, she made

a claim for conduct that was directed at her child. <u>See</u> Doc. No. [43], 6–7.[9] Finally,

in reply regarding their motion to amend, Plaintiffs argue that it is premature to

determine whether official immunity applies and that they have adequately

alleged actual malice. Doc. No. [50], 9–12.

   First, the Court finds that Plaintiff Gail Isaacs' IIED claim fails because the

underlying alleged conduct was not directed towards her. The case Plaintiffs

cited to support this claim concerned conduct directed at the plaintiff-parent, not

conduct directed at that plaintiff-parent's child. <u>See</u> <u>Coon v. Med. Ctr., Inc.</u>, 335

Ga. App. 278, 283–84, 780 S.E.2d 118, 123–24 (2015). Here, the alleged conduct

cannot reasonably be construed as directed at Gail Isaacs, and absent malicious,

willful, or wanton conduct directed at Gail Isaacs, she cannot bring an IIED claim.

---

[9]  The Barrow Defendants make this argument broadly as though it would bar the IIED
claim entirely, but the Court notes that the IIED claim appears to apply not only to Gail
Isaacs' alleged injuries but also to Jasmine Isaacs' alleged injuries. <u>See</u> Doc. No. [28],
¶ 160. Because Plaintiffs allege that Jasmine Isaacs directly suffered this injury, the Court
construes the Barrow Defendants' direct-injury argument as barring Gail Isaacs' claim,
not Jasmine Isaacs' claim.

See Smith v. Stewart, 291 Ga. App. 86, 101, 660 S.E.2d 822, 834 (2008); Ryckeley v. Callaway, 261 Ga. 828, 828–29, 412 S.E.2d 826, 826–27 (1992).

Second, the Court finds that this claim would be subject to dismissal under the pleading standard set out by Iqbal and Twombly. To state an IIED claim in Georgia, a plaintiff must plead: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe." Lightning v. Roadway Exp., Inc., 60 F.3d 1551, 1557 (11th Cir. 1995) (citing Yarbray v. S. Bell Tel. & Tel. Co., 261 Ga. 703, 409 S.E.2d 835, 837 (1991)). "Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law for the court." Higdon v. Jackson, 393 F.3d 1211, 1222 (11th Cir. 2004); see also Gordon v. Frost, 193 Ga. App. 517, 521, 388 S.E.2d 362, 366 (1989) (observing that "[s]ome claims as a matter of law do not rise to the requisite level of outrageousness and egregiousness"). The defendant's alleged conduct "must be 'so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.'" Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) (per curiam) (quoting Georgia Power Co. v. Johnson, 155 Ga.App. 862, 274 S.E.2d 17, 18 (1980)).

16

The Eleventh Circuit has stated that "the level of extreme and outrageous behavior necessary to state" and IIED claim requires allegations of conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." See Henderson v. Reid, 371 Fed. App'x 51, 53 (11th Cir. 2010) (internal quotation marks omitted) (quoting Higdon, 393 F.3d at 1222). General allegations of harassment and humiliation are not enough to set forth an IIED claim; instead, a plaintiff must "concretely and plausibly allege" behavior that is "extreme and outrageous." See Henderson, 371 Fed. App'x at 53; see also Moe Dreams, LLC v. Sprock, No. 1:08-CV-0196-RWS, 2008 WL 4787493, at *9 (N.D. Ga. Oct. 27, 2008) (granting motion to dismiss IIED claim because the plaintiffs "failed to allege conduct that could reasonably be characterized as extreme and outrageous"). Courts have also dismissed IIED claims when the plaintiff made conclusory supporting allegations or did little more than recite the IIED elements. See, e.g., Futrell v. Southeastrans, Inc., No. 120CV04674WMRRDC, 2021 WL 2547660, at *5 (N.D. Ga. Apr. 1, 2021), report and recommendation adopted, No. 120CV04674WMRRDC, 2021 WL 2548697 (N.D. Ga. Apr. 22, 2021); Washington v. Wells Fargo Home Mortg., No. 118CV02218LMMCMS, 2018 WL 4850123, at *4

17

(N.D. Ga. Aug. 14, 2018), <u>report and recommendation adopted</u>, No. 1:18-CV-2218-LMM-CMS, 2018 WL 4850232 (N.D. Ga. Sept. 7, 2018); <u>Pessini v. Nationstar Mortg., LLC</u>, No. 4:15-CV-0123-HLM-WEJ, 2015 WL 12592110, at *6 (N.D. Ga. Oct. 7, 2015), <u>report and recommendation adopted</u>, No. 4:15-CV-0123-HLM-WEJ, 2015 WL 12618786 (N.D. Ga. Oct. 27, 2015).

Here, Plaintiffs vaguely allege that the Barrow Defendants knew or should have known that Clayton Crowe "had previously propositioned, assaulted, sodomized, and/or molested other females in the past" and "had a prior history of sexually assaulting females." Doc. No. [28], ¶¶ 49–51. Plaintiffs claim that the named Barrow County Defendants "intentionally" breached "their duties" by failing to supervise Clayton Crowe, causing Jasmine Isaacs emotional distress. <u>Id.</u>, ¶¶ 151–161. Plaintiffs at various points describe these actions as "extreme" and "outrageous." <u>Id.</u>, ¶¶ 160–161. After review and consideration, the Court finds that Plaintiffs' allegations do not support an IIED claim. While the stated facts support the allegations that Jasmine Isaacs experienced severe distress caused by the Barrow Defendants' conduct, Plaintiffs provide only conclusory allegations that the Barrow Defendants acted intentionally. Further, Plaintiffs offer only conclusory labels that the Barrow Defendants' actions were extreme

18

and outrageous. The supporting facts—allegations that the Barrow Defendants

knew of prior conduct by Clayton Crowe—are themselves ineffectively vague.[10]

And the Court cannot find that the conduct described rises to the requisite level

of extreme or outrageous to support the claim, even at this stage. As the cited

cases above show, federal courts have dismissed IIED claims that were supported

by such labels rather than concrete facts. As a result, the Court finds that the IIED

claim against the named Barrow Defendants is subject to dismissal because it

does little more than recite the elements and refer to vaguely formed facts.[11]

_____

[10] For example, in the Court's view, Plaintiffs' allegations that the Barrow Defendants "knew *or should have known*" about Clayton Crowe's prior, unspecified conduct (see, e.g., Doc. No. [28], ¶ 49) strains the credulity of Plaintiffs' IIED claim, as it is unclear how these Defendants could have *intentionally* inflicted emotional distress on Jasmine Isaacs by *intentionally* failing to supervise Clayton Crowe if it appears that some of them only "should have known" about his alleged prior conduct.

[11] Furthermore, the Court agrees with the Barrow Defendants that under Georgia law, "monitoring, supervising, and controlling the activities of students is a discretionary action protected by the doctrine of official immunity." Butler v. Doe, 328 Ga. App. 431, 433, 762 S.E.2d 145, 147 (2014) (citation omitted). However, official immunity as to a discretionary act may be negated if the official acted with actual malice or actual intent to cause injury. See Adams v. Hazelwood, 271 Ga. 414, 414, 520 S.E.2d 896, 898 (1999). While Plaintiffs' allegations are conclusory and threadbare, the First Amended Complaint specifically describes the relevant breach of duty as an "intentional" failure to supervise and monitor Clayton Crowe and, even more importantly, it alleges that Defendants "intentionally inflicted emotional distress on" Jasmine Isaacs. Doc. No. [28], ¶¶ 152–158. Although a close call at this stage, had this IIED claim not otherwise been subject to dismissal, the Court would have reserved determination of whether official immunity applied until after the facts could have been further developed.

Plaintiffs also assert IIED claims against the Crowe Defendants. One count is against Clayton Crowe for his sexual assault of Jasmine Isaacs. Doc. No. [28], ¶¶ 139–142. The other count is against Keith Crowe and Tonya Crowe for their failure to supervise their son, Clayton. Id., ¶¶ 143–149. While at least the claim against the parents suffers from some of the same pleading deficiencies as the IIED claim against the Barrow Defendants, the Court forgoes a full Rule 15(a) analysis because they are encompassed in the Rule 16(b) analysis above.

### 4. *Addition of Individual Barrow Defendants to Count I*

The amended complaint seeks to add the following individual Barrow Defendants to the first claim for relief, which asserts that certain Barrow Defendants violated Title IX: Dr. Chris McMichael, Lynn Stevens, Rickey Bailey, Debi B. Krause, Dr. Garey H. Huff Sr., Lisa Maloof, Beverly Kelley, Bill Ritter, Jordan Raper, and Stephanie Gober Bramlett. Doc. No. [28], 18.[12] Title IX "reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009).

---

[12] Of these individuals, only Dr. McMichael had been named at all in the initial complaint, and he had not listed under Count I. See Doc. No. [1], 1.

Thus, the Court finds that the addition of the above-named individual Barrow

Defendants to Count I is futile for purposes of Rule 15(a).

> **5.**    ***Addition of Certain Individual Barrow Defendants to Counts II and III***

The amended complaint seeks to add the following individual Barrow

Defendants to the second and third claims for relief, which assert violations of

the Equal Protection Clause pursuant to 42 U.S.C. § 1983 for hostile environment

and failure to train: Dr. Chris McMichael,[13] Lynn Stevens, Rickey Bailey, Debi B.

Krause, Dr. Garey H. Huff Sr., Lisa Maloof, Beverly Kelley, Bill Ritter, Jordan

Raper, and Stephanie Gober Bramlett. Doc. No. [28], 22, 24.

The Barrow Defendants argue that it is unclear whether these individuals

are being sued in their individual or official capacities, but they ask the Court to

infer that they are being sued in their official capacities. See Doc. No. [30-1], 4.

For example, the Barrow Defendants argue that the amended complaint contains

no allegations of wrongful conduct by the individuals. Doc. Nos. [43], 8; [44], 8.

They also argue that it is redundant to name these individuals—most of whom

---

[13] Dr. McMichael had been listed under Count II but not Count III of the initial complaint. Doc. No. [1], 13, 15.

are board members of the Barrow County Board of Education—when the Barrow County Board of Education and Barrow County School System are already named under these counts. Doc. No. [30-1], 4. Plaintiffs counter that it is clear that "all of the claims asserted against [the individual Barrow Defendants] are alleged against them in both their individual and official capacit[ies]." Doc. No [50], 10.

First, the Court disagrees with Plaintiffs that it is "clear" that all claims asserted against the individual Barrow Defendants are against them in both their individual and official capacities. Most of these individuals are identified as being sued in their official and individual capacities only in the case styling. The individual counts do not differentiate whether these individuals are being sued in their official capacities, individual capacities, or both. And the descriptions of these Defendants also tend not to bring clarity to this issue: Dr. McMichael is identified as being sued only in his official capacity (Doc. No. [28], ¶ 10); Jennifer Martin is identified as being sued in "his [sic] individual and official capacity" (id., ¶ 20); Angela Boyd is identified as being sued in her individual and official capacity (id., ¶ 21); and the other individual Barrow Defendants are identified only with respect to their professional associations with the entity Defendants, namely via their roles as school board members (e.g., ¶ 12).

Determining whether a defendant is sued in her or his individual or official capacity requires an examination of the complaint's allegations. See Robinson v. Hunt Cnty., 921 F.3d 440, 446 (5th Cir. 2019); Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993). Using this approach, some courts have determined that pleadings were really brought against individuals in only their official capacities. See, e.g., Riley v. O'Brien, No. CV 16-11064-LTS, 2016 WL 8679258, at *6 (D. Mass. Sept. 2, 2016) (finding that the plaintiff had failed to "set forth any factual basis for liability based on the defendants' individual capacities"); Player v. Univ. of Idaho-Moscow, No. 314CV00238EJLREB, 2015 WL 9898131, at *5 (D. Idaho Aug. 3, 2015) (finding that a defendant was sued only in his official capacity because the complaint's allegations did not support a claim against him in his individual capacity); Wcisel v. City of Utica, No. CIV. 04-40063, 2005 WL 3478355, at *3 (E.D. Mich. Dec. 20, 2005).

Here, the amended complaint's party descriptions identify the board member Defendants only as board members and then describe how the board, as a Defendant, is subject to the Court's venue and jurisdiction. See, e.g., Doc. No. [28], ¶ 12. Counts II and III go on to describe the board members as "final policymakers and administrators" and state that they maintained a certain

"polic[ies], custom[s], and practice[s]." Id., ¶¶ 77–78, 87. After review and consideration, the Court finds that these allegations do not refer to wrongful conduct by the board members in their individual capacities; they instead can be construed only as referring to these Barrow Defendants in their official capacities. Therefore, the Court finds that the amended complaint fails to establish a factual basis for individual-capacity claims as to counts II and III.

Because local government entities can be sued directly, official-capacity lawsuits against local officials are generally not necessary. See Kentucky v. Graham, 473 U.S. 159, 167 (1985); Murray v. Birmingham Bd. of Educ., No. 2:13-CV-822-KOB, 2013 WL 4482687, at *1, 3 (N.D. Ala. Aug. 19, 2013) (granting motion to dismiss claims against school board members because they were redundant of claims against the school board). As a result, Section 1983 claims against individuals sued in their official capacities are generally considered to be claims against the state and subject to dismissal. See Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, these official capacity claims against the individual Barrow Defendants are duplicative of the claims against the county entities and are therefore subject to dismissal.

IV.    **CONCLUSION**

For the reasons discussed above, Plaintiff's Motion for Leave to File First Amended Complaint (Doc. No. [39]) is **DENIED**. Because the Court construes this Motion as a retroactive motion for leave to amend, the Court **STRIKES** the First Amended Complaint filed at Doc. No. [28]. The initial complaint (Doc. No. [1]) is now the operative pleading. As a result, the Court **DENIES as moot** the pending motions to strike (Doc. Nos. [30]; [33]). Finally, the Court **DIRECTS** the Clerk to dismiss any Plaintiffs and Defendants named in the First Amended Complaint (Doc. No. [28]) and not in the operative complaint (Doc. No. [1]).

**IT IS SO ORDERED** this ____th day of August, 2021.

_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

25