**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

J.I.,

    **Plaintiff,**

**v.**

**BARROW COUNTY BOARD OF
EDUCATION et al,**

    **Defendants.**

**CIVIL ACTION FILE**

**No. 2:20-cv-00087-SCJ**

## <u>ORDER</u>

This matter is before the Court on: (1) the Motion for Partial Judgment on the Pleadings (Doc. No. [37])[1] filed by Defendants associated with the Barrow County School System (the "Barrow Defendants"); and (2) the Motion for Partial Judgment on the Pleadings (Doc. No. [51]) filed by Keith B. Crowe and Tonya R. Crowe (the "Crowe Defendants"). Responses and replies have been filed (Doc. Nos. [41]; [45]; [54]; [56]). The Court rules as follows.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.    BACKGROUND

Plaintiff J.I. filed this lawsuit on March 27, 2020, asserting several claims stemming from an October 7, 2016 incident in which she alleges that she was sexually assaulted by another student, "C.C.," at Apalachee High School ("AHS"). Doc. No. [1].[2] The Barrow Defendants answered on July 7, 2020. Doc. No. [9]. The Crowe Defendants moved for an extension of time to file their answer (Doc. No. [22]), which the Court granted (Doc. No. [23]). Before the Crowe Defendants filed an answer to the initial complaint, Plaintiff and her mother attempted to file their amended complaint. See Doc. No. [28]. As a result, the Crowe Defendants filed an answer to the amended complaint. Doc. No. [34].

The Barrow Defendants and Crowe Defendants later separately moved for partial judgment on the pleadings, presenting arguments as to claims found in both the now-operative first complaint and the now-struck amended complaint. Doc. Nos. [37]; [51]. Response and reply briefs followed. Doc. Nos. [41]; [45]; [54]; [56]. The Court discusses the specific claims and arguments in greater depth below.

---

[2] While Plaintiff and her mother later attempted to file an amended complaint (Doc. Nos. [27]; [28]), the Court recently denied a retroactive motion to amend complaint (Doc. Nos. [39]; [108]), so Doc. No. [1] is again the operative complaint.

2

## II.    LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1232–33 (11th Cir. 2005); see also Equal Emp. Opportunity Comm'n v. Austal USA, LLC, 389 F. Supp. 3d 1015, 1018 (S.D. Ala. 2019) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss"). When considering a motion for judgment on the pleadings, the court must accept the facts in the complaint as true and construe the allegations in the light most favorable to the non-moving party. Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1370 (11th Cir. 1998). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). The court should dismiss the complaint only "[i]f upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could

3

be proved consistent with the allegations." <u>Horsley v. Rivera</u>, 292 F.3d 695, 700 (11th Cir. 2002).

## III.   ANALYSIS

First, the Court's order (Doc. No. [108]) striking the amended complaint that had been filed on the docket (Doc. No. [28]) moots the arguments as to now-dismissed Plaintiff Gail Isaacs, now-dismissed Defendants who were not named in the initial complaint, and certain claims that had not been asserted in the first complaint. While the Parties discuss these claims and parties in their briefing, the Court will address only those claims that are included in the initial complaint. The Court also refers to the counts as numbered in the initial complaint.

Second, the Court addresses a procedural issue concerning the Crowe Defendants. A Rule 12(c) motion is appropriate once "the pleadings are closed," which often means once the defendants have answered the operative complaint. <u>See</u> <u>Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist.</u>, 631 F. App'x 851, 853 (11th Cir. 2015). Here, due to the timing of the filings, the Crowe Defendants have filed an answer to the now-struck amended complaint, but they have not filed an answer to the now-operative initial complaint. Thus, technically, the pleadings have not closed as to the Crowe Defendants. The Court, however, finds that this

4

issue does not materially alter the analysis. First, the amended complaint largely *added* facts and claims, so the Crowe Defendants' answer to the amended complaint, for present purposes, can serve as an answer to the initial complaint.[3] Second, as Defendants state, the standard for granting a Rule 12(c) motion for judgment on the pleadings is the same as that of a Rule 12(b)(6) motion to dismiss. Equal Emp. Opportunity Comm'n, 389 F. Supp. 3d at 1018. Thus, in this case, treating the motion as a motion to dismiss or a motion for judgment on the pleadings "is of no moment" because, either way, the analysis concerns "whether the count stated a claim for relief." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); see also Deverze v. Uber Techs., Inc., No. 1:19-CV-4988-CAP, 2021 WL 1053641, at *1 (N.D. Ga. Feb. 4, 2021) (opting to treat a motion for judgment on the pleadings as a motion to dismiss

---

[3] This procedural posture distinguishes this case from another case recently before this Court, Deverze v. Uber Techs., Inc., No. 1:19-CV-4988-CAP, 2021 WL 1053641, at *1 (N.D. Ga. Feb. 4, 2021). There, the Court found that the pleadings had not closed because, while the defendants had answered the initial complaint, they had not yet answered the *amended* complaint. Id. Here, on the other hand, the Crowe Defendants answered the amended complaint, which, as relevant to the matters under consideration, only *added* and did not remove allegations and claims from the original complaint. Thus, as a practical matter, the Court finds that the Crowe Defendants effectively answered the operative complaint.

when it was found that the pleadings had not yet closed). Accordingly, the Court will consider the Crowe Defendants' motion.

## A.   Count I

Count I of the Complaint asserts a sexual harassment claim against the Barrow County Board of Education and Barrow County School System under Title IX, 20 U.S.C. § 1681(a). Doc. No. [1], ¶¶ 36–45. The Barrow Defendants argue that the only viable Defendant as to this claim is the Barrow County School System because the Barrow County Board of Education is not an entity capable of suing or being sued. Doc. No. [37-1], 7–8.

Under Georgia law, "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." Cook v. Colquitt Cnty. Bd. of Educ., 261 Ga. 841, 841, 412 S.E.2d 828, 828 (1992); see also Haugabrook v. Cason, No. CIV.A. 7:10-CV-60 HL, 2010 WL 4823485, at *2 (M.D. Ga. Nov. 22, 2010) (dismissing the Valdosta City School Board from a lawsuit because it was not a legal entity subject to suit).

Plaintiff does not address, let alone acknowledge, this argument. Based on the law cited above and Plaintiff's apparent abandonment of this issue, the Court finds that the Barrow County Board of Education is due to be dismissed from this

6

lawsuit because it is not an entity capable of being sued. This finding applies as to the whole action, so the Court will not address this issue as to later counts.[4]

### B.   Count II

Count II of the Complaint asserts an equal protection violation pursuant to 42 U.S.C. § 1983 for a hostile environment. Doc. No. [1], ¶¶ 46–53. This claim is brought against the Barrow County Board of Education, the Barrow County School System, Dr. Chris McMichael, Jennifer Martin, and Angela Boyd. Id.

The Barrow Defendants argue that the claim is subject to dismissal because it restates Count I's Title IX claim instead of an equal protection claim. Doc. No. [37-1], 9–11. Specifically, the Barrow Defendants argue that Count II tracks the language for a Title IX deliberate indifference claim. Id. at 9–10. They also note that the claim confusingly refers to a violation of Plaintiff's "due process rights," which is separate from an equal protection claim and would be subject to dismissal. Id. at 10. Next, the Barrow Defendants argue that Count II must be dismissed because it otherwise fails to state an equal protection claim since the only alleged "custom" at issue is not alleged to have resulted in a past pattern of

---

[4]  The Court's rulings to date leave the Barrow County School System as the sole Defendant for Count I.

7

constitutional violations. Id. at 11–13. Finally, the Barrow Defendants argue that Count II fails as against the individual Barrow Defendants because they are entitled to qualified immunity. Id. at 13–16.

Plaintiff, referring to the amended complaint, counters that Count II states an equal protection claim because it alleges a practice or custom that resulted in a past pattern of constitutional violations with its allegations that the Barrow County Defendants: (1) knew of C.C.'s past sexual harassment; (2) continually failed to protect Plaintiff and other students from being sexually assaulted by C.C.; (3) had customs and practices related to reporting sexual assaults that violated Plaintiff's equal protection rights; and (4) were deliberately indifferent to Plaintiff's report of sexual assault and harassment, which "violated her equal protection and due process rights." Doc. No. [41], 10–11. Further, Plaintiff argues that the allegations in her Complaint sufficiently show the necessary "clearly established" violations of the Constitutions, including a pattern of past violations, to overcome qualified immunity at this stage. Id. at 11–14.

In reply, the Barrow Defendants reiterate their earlier arguments and also contend that Plaintiff's Complaint fails to allege a past pattern of constitutional

violations because the only constitutional violation it alleges is the single incident involving Plaintiff. Doc. No. [45], 6–7.

The Court addresses each of the Barrow Defendants' arguments in turn.

### 1. *Count II Fails Because it Does Not State an Equal Protection Claim; Alternatively, it States a Duplicative Title IX Claim*

In Count II of the Complaint, Plaintiff alleges that the Barrow Defendants maintain policies and customs of (1) investigating sexual assaults at school as though they are acts of consensual activity and (2) disciplining those involved, including the victim. Doc. No. [1], ¶ 48. Plaintiff seems to allege that these policies and customs resulted in the Barrow Defendants failing to timely remove C.C. from school, which resulted in a failure to create a safe school environment for Plaintiff. See id., ¶ 49. Plaintiff then alleges that the Barrow Defendants knew that adhering to these policies and customs "denied [Plaintiff] equal access to the School District's resources, accommodations and opportunities on the basis of her sex," which "amounted to deliberate indifference" that violated Plaintiff's "equal access to her educational institution's resources, accommodations, and opportunities without discrimination on the basis of sex." Id., ¶¶ 50–52.

The Barrow Defendants argue that Plaintiff asserts not an Equal Protection claim but instead a Title IX claim, noting that Plaintiff's language appears to draw

from Title IX and uses "deliberate indifference" wording often associated with Title IX claims. First, the relevant Title IX statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program." 20 U.S.C. § 1681(a). Second, the Court notes that while Title IX claims often use "deliberate indifference" language, see, e.g., Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 644 (1999), courts have also applied a "deliberate indifference" standard to Equal Protection claims, see, e.g., Hill v. Cundiff, 797 F.3d 948, 978 (11th Cir. 2015) (stating that a public official may be held liable for an Equal Protection violation upon a showing of deliberate indifference to known sexual harassment); Sturdivant v. Blue Valley Unified Sch. Dist., USD 229, 469 F. Supp. 3d 1121, 1132 (D. Kan. 2020) (citing cases finding that a deliberate indifference analysis could apply to an Equal Protection claim).

To be sure, Count II essentially alleges that the Barrow Defendants' acts discriminated against Plaintiff and denied her the benefits of an education program, which substantively resembles Title IX. And if Plaintiff is using § 1983 as a vehicle to assert what is effectively a Title IX claim, Count II would be subject to dismissal under Eleventh Circuit law at least as to the individual Barrow

Defendants. <u>See</u> <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Although this court has never considered whether a plaintiff can use § 1983 to assert a Title IX claim against an individual school official, we conclude that to allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients.").[5] However, the Court finds that the best course of analysis is to determine whether Plaintiff has otherwise stated an Equal Protection claim, even if she has used language similar to that in Title IX.

Section 1983 allows persons to sue persons or municipalities acting under color of state law for violations of federal law, which includes Equal Protection violations of the right to be free from sex discrimination. <u>Hill</u>, 797 F.3d at 976. A plaintiff can state such a § 1983 claim by alleging that a custom, policy, or practice caused sexual harassment. <u>See</u> <u>id.</u> at 977. A municipal entity, such as the Barrow County School System, cannot be liable under a *respondeat superior* theory and

---

[5] At least one court has concluded otherwise, finding that a § 1983 claim based on the Equal Protection Clause is *not* subsumed by Title IX as to individual defendants because "Title IX does not provide a private right of action against individual school employees." <u>Levarge v. Preston Bd. of Educ.</u>, 552 F. Supp. 2d 248, 254 n.8 (D. Conn. 2008). Because the Eleventh Circuit's published decision in <u>Williams</u> is binding on this Court, however, the Court will adhere to the reasoning provided in <u>Williams</u>.

11

must instead be alleged to have been responsible for the relevant custom, policy, or practice. See id.; Harper v. Se. Ala. Med. Ctr., 998 F. Supp. 1289, 1299 (M.D. Ala. 1998) (stating that a municipal entity may be liable if the plaintiff can show that it was "the moving force" behind the plaintiff's injury). For the alleged custom, policy, or practice to be actionable, it must have been "so settled and permanent that it takes on the force of law." Leitgeb v. Kelley, 510 F. Supp. 2d 1227, 1235 (N.D. Ga. 2007). Further, that custom, policy, or practice must be alleged either to be facially discriminatory or otherwise have resulted in a past pattern of constitutional violations. See Stepanovich v. City of Naples, 728 F. App'x 891, 897 (11th Cir. 2018). A plaintiff may state a claim against a government *official*, however, by alleging deliberate indifference to known sexual harassment. See Hill, 797 F.3d at 978. In other words, "deliberate indifference to sexual harassment is an equal protection violation," and to state a claim for relief, a plaintiff "must allege a fact from which the court could reasonably infer that 'the individual defendant actually knew of and acquiesced in the discriminatory conduct.'" Doe v. Hoover City Bd. of Educ., No. 2:19-CV-243-AMM, 2020 WL 5548804, at *13 (N.D. Ala. Sept. 16, 2020) (quoting Hill, 797 F.3d at 978–79).

12

Here, Plaintiff's claim fails as pleaded for several reasons. To start, the Complaint does not adequately allege a settled custom, policy, or practice that is facially discriminatory or resulted in a past pattern of constitutional violations. Plaintiff vaguely alleges early in the Complaint that C.C. "*reportedly* has a history of sexually inappropriate behavior" and that unidentified "teachers and administrators at AHS knew C.C. had previously propositioned other female students at school for sex." Doc. No. [1], ¶¶ 1, 3 (emphasis added). The Complaint also later broadly refers to failures to "supervise and discipline a student who posed a real and immediate danger to his fellow students." E.g., id., ¶ 33. These vague facts do not support a plausible claim that the Barrow Defendants knew of and were deliberately indifferent to a settled custom or practice that led to a violation of Plaintiff's constitutional rights. The allegations are equal parts equivocal and vague in a manner that prevents the Court from discerning what is concretely alleged to have occurred in the past and who knew of those past acts (e.g., C.C. "reportedly" had a history of "sexually inappropriate behavior" and Defendants were deliberately indifferent to unspecified "reports of sexual harassment"). The allegation that teachers and administrators at AHS knew about C.C.'s prior conduct does not even identify the Barrow Defendants and

13

thus is not readily attributable to them. Furthermore, while Plaintiff arguably alleges prior inappropriate sexual conduct by C.C., she does not allege that the prior incidents had led to similar violations of constitutional rights. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1329 (11th Cir. 2015).

Interestingly, Count II itself does not even state that this past deliberate indifference to C.C.'s prior conduct was the policy or custom at issue; instead, it appears to allege that the offending custom was "investigating every sexual incident, including sexual assault, as if it is consensual sexual activity, and . . . initiating disciplinary action against the victim and assailant." Doc. No. [1], ¶ 48.[6] This alleged custom had not been discussed earlier in the Complaint, was not identified as an officially promulgated policy, Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003), and the Court cannot find that there is sufficient factual support to show an actual policy or custom—let alone one that resulted in a past pattern of constitutional violations.[7] The Court thus must find that

---

[6] While Count II alleges that Defendants showed "deliberate indifference to reports of sexual harassment," that deliberate indifference does not appear to be the policy that is the subject of this claim because Count II identifies the policy concerning investigating sexual incidents to be the relevant policy. See Doc. No. [1], ¶¶ 48, 52.

[7] And to the extent Count II could be construed as alleging *knowledge* of a policy or custom, the allegation is that Defendants knew their policies "denied [Plaintiff] equal

Plaintiff has failed to state an Equal Protection claim. See Stepanovich, 728 F. App'x at 898 (dismissing an Equal Protection claim when the plaintiff had made only vague allegations that did not adequately show a custom or policy of which the defendants were aware and that had resulted in past constitutional deprivations).

Finally, in the alternative, the Court finds that Count II states a duplicative Title IX claim instead of an Equal Protection claim. To start, the Court does not find that the use of "deliberate indifference" language necessarily means that Count II is a Title IX claim, because such language has been used to bring Equal Protection claims. See supra. However, Plaintiff's allegations indicate that her injury was having to remove herself from school and otherwise being denied the benefits of an educational opportunity. This language directly tracks Title IX. Thus, while Count II is labeled as an Equal Protection claim and Plaintiff superficially states that her constitutional rights were violated, the injuries described show that Count II is really a Title IX claim. As a result, the Court finds

---

access to the School District's resources, accommodations and opportunities on the basis of her sex." Doc. No. [1], ¶ 50. Knowledge of this single incident does not show a pattern of past constitutional violations. Grech, 335 F.3d at 1330 n.6.

15

in the alternative that Count II it is subject to dismissal as to the individual Barrow Defendants pursuant to <u>Williams</u>.[8]

### 2.    *Plaintiff Does Not State a Due Process Claim*

Count II is labeled an equal protection claim, but Plaintiff passingly alleges that the Barrow Defendants violated her "substantive due process rights under the Fourteenth Amendment." Doc. No. [1], ¶ 52. In response to the Barrow Defendants' argument that Plaintiff did not state a substantive due process claim, Plaintiff argues that she has adequately alleged that the Barrow Defendants' customs, practices, and deliberate indifference violated her "equal protection rights and due process rights." Doc. No. [41], 10–11.

Although the Fourteenth Amendment's Equal Protection Clause and Due Process Clause are similar, they are not the same. <u>See</u> <u>Powers v. Harris</u>, 379 F.3d 1208, 1215 (10th Cir. 2004) ("The Equal Protection and Due Process clauses protect distinctly different interests."). The Equal Protection Clause protects "every person within the State's jurisdiction against intentional and arbitrary discrimination." <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)

---

[8] Because the Court finds that Plaintiff failed to state an Equal Protection claim, the Court will forgo a qualified immunity analysis as to the individual Barrow Defendants.

(quotations and citations omitted). The Due Process Clause, on the other hand, "was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). For example, even when a state actor's conduct affects all persons equally, the substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Thus, the Equal Protection Clause differs from the Due Process Clause in both the type of right protected and the manner in which an individual is deprived of that right.

"To state a substantive due process claim, a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." Hoefling v. City of Miami, 811 F.3d 1271, 1282 (11th Cir. 2016) (internal quotations and citations omitted). For the actor's tort to be raised to the stature of a constitutional violation, the plaintiff must plead that the official action "shocks the conscience." Aracena v. Gruler, 347 F. Supp. 3d 1107, 1116 (M.D. Fla. 2018); see also McCants v. City of Mobile, 752 F.

17

App'x 744, 749 (11th Cir. 2018) (finding that an officer's punch to the chest did not shock the conscience); Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1378–79 (11th Cir. 2002) (stating that if a teacher's tort, even if intentional, does not shock the conscience, the substantive due process claim fails). Also, deliberate indifference is generally insufficient to support a substantive due process claim. See Nix, 311 F.3d at 1377–78.

Here, Count II appears intended to be an equal protection claim. Assuming Plaintiff intended to bring a substantive due process claim, however, she failed to state it correctly. Specifically, she alleges that "Defendants' *deliberate indifference*" violated her substantive due process rights. Doc. No. [1], ¶ 52. As the authority cited above shows, deliberate indifference typically is not enough to state a substantive due process claim. Furthermore, even viewing the facts in the light most favorable to Plaintiff, the alleged conduct as to this claim—which is not even alleged to be intentional—does not "shock the conscience" in a manner that would support a substantive due process claim. For these reasons, the Court finds that Plaintiff has failed to state a substantive due process claim in Count II.

18

C.     <u>**Count III**</u>

Count III of the Complaint asserts an equal protection violation pursuant to 42 U.S.C. § 1983 for a failure to train. Doc. No. [1], ¶¶ 54–60. This claim is brought against the Barrow County Board of Education, the Barrow County School System, Jennifer Martin, and Angela Boyd. <u>Id.</u> Specifically, Plaintiff alleges that the Barrow Defendants had a duty to train school employees as to policies concerning Title IX, which include reporting and addressing sexual harassment. <u>Id.</u>, ¶ 55. Plaintiff alleges that the Barrow Defendants did not adequately train their employees regarding these policies, and Plaintiff provides several examples of this failure, including lacking adequate training materials and failing to advise Plaintiff as to certain Title IX accommodations. <u>Id.</u>, ¶ 56. Plaintiff alleges that this failure to train caused Plaintiff's harassment and that the Barrow Defendants knew that they needed to train staff as to these matters but failed to do so, which amounted to deliberate indifference. <u>Id.</u>, ¶¶ 57–60.

The Barrow Defendants state that their arguments as to Count II apply to Count III. Doc. No. [37-1], 16. Specifically, they argue that Count III merely restates Count I's Title IX claim, appears to make another due process claim, does not apply the correct standard, does not state an equal protection claim, and is

19

subject to dismissal as to the individual Barrow Defendants because they enjoy qualified immunity. Id. at 16–21. Plaintiff does not address the argument that this claim simply restates the Title IX claim, but she does argue that Count III states an equal protection claim and that the individual Barrow County Defendants are not entitled to qualified immunity at this stage. See Doc. No. [41], 11–14.

To hold a municipality liable under § 1983 for a failure to train or supervise its employees, a plaintiff must sufficiently allege that the "municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Such failure must rise to the level of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). A plaintiff generally must allege a pattern of similar constitutional violations by untrained employees. See Connick v. Thompson, 563 U.S. 51, 62 (2011). But a plaintiff may succeed on a failure-to-train claim absent a pattern of violations if the plaintiff shows that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can

reasonably be said to have been deliberately indifferent to the need." <u>Canton</u>, 489 U.S. at 390. "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." <u>Id.</u> Finally, the plaintiff must show that the failure to train caused her constitutional injury by showing that the identified deficiency in the training is closely related to her injury. <u>Daniel v. Hancock Cnty. Sch. Dist.</u>, 626 F. App'x 825, 835 (11th Cir. 2015).

To start, the Court notes that much of the Title IX language in Count III relates to the alleged failure to train employees concerning Title IX. And to the extent Plaintiff includes Title IX language in the substance of her claim (<u>see, e.g.</u>, Doc. No. [1], ¶ 57), the Court finds below that Plaintiff otherwise adequately states a § 1983 failure-to-train claim that stands apart from the Title IX language. Also, applying the same analysis as in Count II, the Court finds that Plaintiff does not state a substantive due process claim in Count III.

Now, the Court turns to whether Plaintiff states an Equal Protection claim in Count III. The Court finds that Plaintiff adequately alleges a policy of failing to train, as Plaintiff identifies the relevant Barrow Defendants, describes the failure to train, and provides examples of such failures. While Plaintiff fails to

21

allege a pattern of constitutional violations stemming from this failure to train,[9] the Court finds that she does adequately allege that the need for training was obvious because she alleges that the Barrow Defendants knew of not only their duty to provide such training but also the constitutional violations that would result when such training was not provided. See Doc. No. [1], ¶ 57. While the factual basis for this claim is far from robust, the Court finds that Plaintiff has provided enough information to show an obvious need for adequate Title IX training. With these supporting facts, Plaintiff also adequately alleges that the Barrow Defendants' failure to train "was unreasonable and amounted to deliberate indifference." Id., ¶ 58. Finally, Plaintiff sufficiently alleges that this failure to train caused her sexual harassment, which amounted to a violation of her constitutional right to be free from sex discrimination. Id., ¶¶ 59–60. Accordingly, at this stage, the Court finds that Plaintiff has adequately stated a failure-to-train claim under § 1983.

Because the Court finds that Plaintiff has stated a failure-to-train claim, it now addresses whether the individual Barrow Defendants enjoy qualified

---

[9] Plaintiff's deficient pleading concerning alleged prior sexual assaults, discussed supra, prevents Plaintiff from being able to show a pattern of prior constitutional violations.

22

immunity. A public official sued in her individual capacity may enjoyed qualified immunity protection against a § 1983 claim if her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Williams, 477 F.3d at 1300. A court should find qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right. Id. "To establish a defense of qualified immunity, the defendant must show that he acted within the scope of discretionary authority when performing the challenged conduct. . . . If the defendant meets this burden, the burden shifts to the plaintiff to establish that the defendant's conduct violated clearly established law." Id. (citing Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)).

First, the Court finds that the decision of whether and how to train employees is a discretionary act. See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1118 (11th Cir. 2005); Gibbons v. McBride, 124 F. Supp. 3d 1342, 1368–69 (S.D. Ga. 2015). Thus, Plaintiff must show that that the failure to train violated clearly established law or constitutional rights of which a reasonable person would have known. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). A right may be clearly established for qualified immunity

purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291–92 (11th Cir. 2009). At this stage of the case, the Court finds that Plaintiff has adequately alleged that the Barrow Defendants' failure to train caused a violation of her constitutional right to be free from sex discrimination and harassment, which the Court finds to be a clearly established right. See Hill, 797 F.3d at 976, 979. While further factual development may alter this outcome, the Court cannot find at this stage, viewing the facts in the light most favorable to Plaintiff, that qualified immunity bars this claim. Accordingly, Count III is not due to be dismissed.

### D.   <u>Count IV</u>

Count IV of the Complaint asserts an equal protection violation pursuant to 42 U.S.C. § 1983 for supervisory liability. Doc. No. [1], ¶¶ 61–65. This claim is brought against only Dr. Chris McMichael. Id. Specifically, Plaintiff alleges that Dr. McMichael had "supervisory duties and responsibilities" with respect to

school employees, that he knew or should have known that his subordinates' conduct created "a pervasive and unreasonable risk of constitutional injury to" Plaintiff, and that his failure to supervise resulted in a violation of Plaintiff's constitutional rights. Doc. No. [1], ¶¶ 62–65.

The Barrow Defendants argue that Count IV is subject to dismissal for the same reasons as discussed with respect to Counts II and III. Doc. No. [37-1], 21. They also argue that Count IV fails because "supervisory liability" is not a viable § 1983 claim if predicated not on the official's direct involvement in an allegedly unconstitutional act but instead solely on the official's supervisory authority. Id. at 21–23. In response, Plaintiff does not address whether a "supervisory liability" theory can support a § 1983 claim, but she does argue that Count IV states an equal protection claim and that qualified immunity does not apply at this stage. See Doc. No. [41], 11–14.

The Eleventh Circuit has held that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007) (quotation and citation omitted). A defendant who is alleged to be a supervisor is liable only if he personally participated in the allegedly

25

unconstitutional conduct or if there is a causal connection between his actions and the alleged constitutional deprivation. Id. A causal connection may exist if there is a custom or policy that results in deliberate indifference to constitutional rights and there are enough facts to allow the court to infer that the supervisor knew that subordinates had acted unlawfully and yet failed to stop them. See id. at 1328–29.

Here, Plaintiff does not allege that Dr. McMichael personally participated in the allegedly unconstitutional conduct. And, like in Count III, she does not identify a series of past violations. However, given the Court's finding as to the failure to train alleged in Count III, and after reviewing the allegations in Count IV, the Court finds that Plaintiff has pleaded enough facts to: (1) show a custom or policy that results in deliberate indifference to the constitutional right to be free from sex discrimination; and (2) allow the Court to infer that Dr. McMichael knew that his subordinates engaged in this deliberate indifference. The Court acknowledges that this "causal connection" test is "extremely rigorous," Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998), and even though Plaintiff's pleading could have been more developed, the Court finds that it is sufficient to survive the pleadings stage.

26

Furthermore, the Court finds that Plaintiff has adequately alleged that Dr. McMichael failure to supervise caused a violation of her constitutional right to be free from sex discrimination and harassment, which the Court finds to be a clearly established right. See Hill, 797 F.3d at 976, 979. While further factual development may alter this outcome, the Court cannot find at this stage, viewing the facts in the light most favorable to Plaintiff, that qualified immunity bars this claim. Accordingly, Count IV is not due to be dismissed.

### E.     Count V

Count V asserts a negligence claim against Jennifer Martin and Angela Boyd for their alleged failure to supervise and monitor potentially dangerous students, which caused Plaintiff's injuries. Doc. No. [1], ¶¶ 66–70. The Barrow Defendants argue that official immunity shields these Defendants because, under Georgia law, monitoring and supervising students is a discretionary action for which officials enjoy official immunity. Doc. No. [37-1], 23–24. Plaintiff, referring to her amended complaint, argues that she pleaded the requisite actual malice to overcome official immunity at this stage and that the Barrow Defendants' failure to supervise was a ministerial act. Doc. No. [41], 13–17.

Under Georgia law, a public school official is entitled to official immunity protection for her acts if such acts were: (1) within the scope of her employment; (2) discretionary, as opposed to ministerial, in nature; and (3) without willfulness, malice, or corruption. See Wright v. Ashe, 220 Ga. App. 91, 92, 469 S.E.2d 268, 270 (1996); see also Perkins v. Morgan Cnty. Sch. Dist., 222 Ga. App. 831, 834–35, 476 S.E.2d 592, 595 (1996) (stating that a public agent can be sued in her official capacity if she "acted with actual malice or actual intent to cause injury while performing a discretionary function"). Typically, determining whether an act is discretionary or ministerial depends on the character of the act, "not the general nature of the job," and such a determination should be made on a case-by-case basis. Perkins, 222 Ga. App. at 833, 476 S.E.2d at 595. That being said, "Georgia law is well established that the monitoring, supervising, and controlling the activities of students is a discretionary action protected by the doctrine of official immunity." Butler v. Doe, 328 Ga. App. 431, 433, 762 S.E.2d 145, 147 (2014) (internal quotations and citations omitted); Perkins, 222 Ga. App. at 835, 476 S.E.2d at 596; Reece v. Turner, 284 Ga. App. 282, 285–86, 643 S.E.2d 814, 817 (2007) (stating that the court was bound by precedent to find that the supervision of students was a discretionary function). This rule applies even when the school

28

official is alleged to have completely failed to supervise students. <u>Butler</u>, 328 Ga. App. at 433, 762 S.E.2d at 147.

First, the Parties do not appear to contest—and the Court finds—that the individual Barrow Defendants' actions were taken within the scope of their employment. Accordingly, the Court turns to deciding whether these Barrow Defendants are alleged to have been performing discretionary or ministerial acts, or whether that determination should be made after further factual development. After reviewing the Complaint and considering the Parties' arguments, the Court finds that, even viewing the Complaint's allegations in the light most favorable to Plaintiff, the Barrow Defendants were performing a discretionary function when allegedly supervising or failing to supervise students. The Georgia cases cited above establish that the supervision of students is a discretionary function. While Plaintiff seems to argue that further factual development is necessary to determine whether these Defendants' acts were ministerial or discretionary,[10] Georgia law categorically classifies the supervision of students to be a

---

[10]  Plaintiff also appears to argue that the Barrow Defendants knew of C.C.'s prior sexual assaults, and that this prior knowledge renders the individual Barrow Defendants' acts ministerial. <u>See</u> Doc. No. [41], 15–17. Assuming that is indeed Plaintiff's position, she does not cite supporting law, and the Court cannot find that such prior knowledge would turn a discretionary act into a ministerial act.

29

discretionary function. And Plaintiff makes no substantive argument as to why the Court should find, against the weight of authority, that these Defendants' supervision constituted a ministerial rather than discretionary act.[11]

Where factual development may have been necessary would have been the issue of whether the individual Barrow Defendants performed the discretionary function with the requisite actual malice or intent to cause injury necessary to strip a public agent of official immunity. But Plaintiff's Complaint, which is the operative pleading, does not even plead such animus; instead, Count V alleges only that these Barrow Defendants' "negligently breached their duties." See Doc. No. [1], ¶¶ 66–70. Thus, the Court finds that the pleading does not allege facts that would strip these Defendants of official immunity.

Because these Barrow Defendants are alleged to have been undertaking acts that are, by law, discretionary in nature, and because Plaintiff fails to allege that these Defendants performed these discretionary acts with actual malice or

---

[11] For example, if the complete failure to supervise students is a discretionary act, Butler, 328 Ga. App. at 433, 762 S.E.2d at 147, the Court cannot fathom a set of facts that would render the case's alleged supervision or lack thereof to be ministerial.

intent to cause injury, the Court finds that the Barrow Defendants are entitled to judgment as a matter of law as to Count V of the Complaint.

### F.    Count VI

Count VI alleges that Jennifer Martin and Angela Boyd "recklessly and/or wantonly" breached their duties to J.I. for their alleged failure to supervise and monitor potentially dangerous students, which caused Plaintiff's injuries. Doc. No. [1], ¶¶ 71–75.[12] The Barrow Defendants again argue that official immunity applies because monitoring and supervising students is a discretionary action for which officials enjoy official immunity. Doc. No. [37-1], 23–24. And Plaintiff again argues that she pleaded the requisite actual malice to overcome official immunity at this stage and that the Barrow Defendants' failure to supervise was a ministerial act. Doc. No. [41], 13–17.

First, the Court finds that the allegations in Count VI are substantially the same as those in Count V. The only material difference is that where Count V alleged that these Barrow Defendants "negligently" breached their duty to

---

[12] This claim identifies "J." as the individual whom Defendants failed to supervise, and who allegedly had a "habit and practice of harassing, intimidating, and sexually aggressive behavior." Doc. No. [1], ¶ 73. The Court assumes that Plaintiff intended to refer to C.C. as the individual whom Defendants failed to supervise.

supervise, Count VI alleges that they "recklessly and/or wantonly" breached this duty. Thus, the Court's analysis as to Count V applies to Count VI, except insofar as Count VI includes allegations of reckless and/or wanton conduct. Thus, the Court finds that these Barrow Defendants were performing a discretionary act within the scope of their employment. The main question, then, is whether Count VI alleges the requisite actual malice or intent to cause injury necessary to strip these Defendants of official immunity. In other words, if allegations of reckless and/or wanton conduct are the same as allegations of actual malice or intent to cause injury, then this claim should survive for further factual development.

Under Georgia law, however, it does not. The Supreme Court of Georgia has considered whether allegations of "wanton" conduct were sufficient to strip a public agent of official immunity. Murphy v. Bajjani, 282 Ga. 197, 203–04, 647 S.E.2d 54, 60 & n.6 (2007). It stated that

> [a] public agent's acts do not have official immunity if they are discretionary acts committed "with actual malice or with intent to cause injury." . . . "Actual malice," as that term is used in the constitutional provision, denotes "express malice," i.e., "a deliberate intention to do wrong," and does not include "implied malice," i.e., **the *reckless disregard* for the rights or safety of others**. . . . A "deliberate intention to do wrong" such as to constitute the actual malice necessary to overcome official immunity must be the intent to

> cause the harm suffered by the plaintiffs. **In contrast, plaintiffs' allegations of malice are of deliberate acts of wrongdoing done with *reckless disregard* for the safety of others. As such, they do not allege the actual malice necessary to overcome official immunity for discretionary acts**.

Id. (citations omitted and emphasis added). In making these findings, the Supreme Court of Georgia reversed a denial of judgment on the pleadings. Id. at 204, 647 S.E.2d at 60. Thus, Plaintiff's allegations that these Barrow Defendants acted recklessly and/or wantonly do not equate to allegations that they acted with actual malice or intent to cause injury. As a result, Plaintiff's pleadings do not create a question of official immunity at this stage, and the Barrow Defendants are entitled to judgment as a matter of law as to Count VI.

## G.    Count VII

Count VII asserts a failure-to-train claim against Dr. Chris McMichael, Jennifer Martin, and Angela Boyd for their alleged failure "to properly hire, train, retain, and supervise" teachers. Doc. No. [1], ¶¶ 76–79. Plaintiff alleges that these Defendants "negligently, recklessly and/or wantonly" breached this duty. E.g., id., ¶ 78. The Barrow Defendants argue that this claim is subject to dismissal because hiring, retaining, training, and supervising local government personnel are discretionary acts to which official immunity applies. Doc. No. [37-1], 24–25.

33

Plaintiff argues that she has pleaded the requisite actual malice to overcome official immunity at this stage and that the Barrow Defendants' failure to supervise was a ministerial act. Doc. No. [41], 13–17.

Count VII's allegations are similar to those in Count V and VI, except that they: (1) concern the act of properly hiring, training, retaining, and supervising teachers rather than supervising students; and (2) allege that the relevant breach was done "negligently, recklessly and/or wantonly." Thus, the Court first must determine whether the relevant conduct was discretionary or ministerial. Under Georgia law, hiring, training, retaining, and supervising public employees is discretionary. See Russell v. Barrett, 296 Ga. App. 114, 120, 673 S.E.2d 623, 629 (2009); Carter v. Glenn, 249 Ga. App. 414, 416, 548 S.E.2d 110, 113 (2001). This rule has been applied to the "retention, discipline, and supervision of school employees by their supervisors." Johnson v. Bibb Cnty. Bd. of Educ., No. 5:07-CV-425 (CDL), 2009 WL 1885052, at *15 (M.D. Ga. June 29, 2009). This Court also finds that this rule applies to the school setting because hiring, training, retaining, and supervising teachers and other school employees involves the exercise of personal deliberation and judgment necessary to render a task discretionary. See id. at *14.

Finally, for the reasons discussed in the Court's analyses of Counts V and VI, the Court finds that Plaintiff's allegations of negligent, reckless, and/or wanton conduct are insufficient to strip these Defendants of official immunity. Thus, the Court finds that, even viewing the allegations in the light most favorable to Plaintiff, the Barrow Defendants are entitled to official immunity and thereby entitled to judgment on the pleadings as to Count VII.

## H.    Count VIII

Count VIII asserts a negligent supervision claim against the Crowe Defendants, alleging that they negligently failed to supervise their son, C.C., which caused Plaintiff's injuries. Doc. No. [1], ¶¶ 80–83. Plaintiff alleges that the Crowe Defendants owed a duty to students of AHS to act in a reasonably prudent manner in supervising C.C., a duty that they negligently breached by failing to monitor him and prevent him from engaging in a sexual assault despite knowing[13] of his "habit and practice of harassing, intimidating, and sexually

---

[13] As the Court notes above, Plaintiff's allegations regarding C.C.'s alleged past sexual conduct are threadbare. She alleges that C.C. "reportedly has a history of sexually appropriate behavior," and she vaguely states that "*teachers and administrators at AHS*" knew about C.C.'s prior conduct. Doc. No. [1], ¶¶ 1, 3. Until Count VIII, however, Plaintiff does not allege that they knew of his prior sexual conduct, and she provides no facts to support that statement. See id., ¶ 82.

aggressive behavior." Doc. No. [1], ¶¶ 81–82. Plaintiff alleges that this negligence caused her injury. Id., ¶ 83.

The Crowe Defendants argue that this claim is subject to dismissal because Plaintiff has failed to plead sufficient facts regarding C.C.'s alleged prior sexual history or how the Crowe Defendants knew or should have known of that alleged conduct. Doc. No. [51-1], 7–11. They also argue the claim fails because, when the alleged incident occurred, C.C. was not under the supervision or control of the Crowe Defendants but was instead under the supervision and control of school administrators, and therefore the Crowe Defendants cannot have breached their duty of ordinary care at that time. Id. at 11–13. Plaintiff argues that the Complaint sufficiently alleges that the Crowe Defendants "had knowledge of or should have had knowledge of" C.C.'s past conduct. Doc. No. [54], 4–7.

"Where liability is based on parents' alleged failure to supervise or control their child, a key question is the foreseeability of the harm suffered by the plaintiff," or, "whether the parents had knowledge of facts from which they should have reasonably anticipated that harm to another would result unless they controlled their child's conduct." Boston v. Athearn, 329 Ga. App. 890, 893, 764 S.E.2d 582, 585 (2014); see also Hill v. Morrison, 160 Ga. App. 151–52, 151, 286

36

S.E.2d 467, 468 (1981) (stating that no parental negligence may be shown if "there is no dangerous proclivity known to the [parents] and no reason to anticipate the injury which in fact occurred"). Circumstances dictate the applicable level of care, but Georgia law is clear that there must be some showing that "the parents were on notice that, absent their intervention, injury was likely to result from the child's conduct." Boston, 329 Ga. App. at 893–94, 764 S.E.2d at 585–86.

To start, the Court cannot find a sufficient factual basis in the Complaint to support this claim. To state a plausible claim based on parental negligence, Plaintiff must have pleaded facts that allow the Court to infer that the Crowe Defendants were on notice of C.C.'s prior alleged acts. The Complaint fails to allege such facts. All it provides is a general, equivocal allegation that C.C. reportedly has a prior history of sexual misconduct, and it alleges that AHS employees knew of this conduct. The Complaint alleges nothing about the Crowe Defendants' knowledge of this vaguely described conduct until Count VIII, at which point it provides a conclusion instead of supporting factual matter. These allegations simply do not provide enough factual support to sustain this claim because the Court cannot reasonably infer that the Crowe Defendants knew of

C.C.'s prior alleged misconduct.[14] Accordingly, the Court finds that Count VIII

is due to be dismissed.[15]

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTs in part and DENIES**

**in part** the Barrow Defendants' Motion for Partial Judgment on the Pleadings

(Doc. No. [37]) and **GRANTS** the Crowe Defendants' Motion for Partial

Judgment on the Pleadings (Doc. No. [51]).

---

[14]  Because the Court finds that Count VIII fails due to Plaintiff's failure to plead the Crowe Defendants' knowledge of C.C.'s alleged prior acts, the Court does not discuss in depth whether the fact that C.C. was under AHS's supervision and control at the time of the incident necessarily means that the Crowe Defendants could not be liable. While the case they cite states that a person undertaking the control and supervision of a child "becomes responsible" for that child, see Bunn v. Landers, 230 Ga. App. 744, 745, 498 S.E.2d 109, 112 (1998), it does not clearly hold that such a person or entity becomes *solely* responsible in a manner that prevents the parents from also being liable. Further, the Court's research indicates that this question is far from settled and, in any event, would have been better addressed after further factual development. Compare Johnson v. Cantie, 74 A.D.3d 1724, 1725 (N.Y. App. Div. 2010) (finding at summary judgment that a child's parents had shown that they "did not have the opportunity or the ability to control their daughter's behavior in the classroom") with Schmidt v. Martin, 510 P.2d 1244, 1247 (Kan. 1973) (noting, in a case not involving a school, that many courts have determined that "if the parent selects a custodian for the child or permits the child to be in the custody of another, such person is in loco parentis or is the agent of the parent," and "the negligence of the custodian will be imputed to the parent").

[15]  The Crowe Defendants' remaining arguments in their Motion for Partial Judgment on the Pleadings concern claims that were in the struck amended complaint and not in the original, now-operative complaint. See Doc. No. [51-1], 13–23. Because those claims are no longer part of this lawsuit, the Court need not discuss them here.

The Court rules as follows: (1) The Barrow County Board of Education, Keith B. Crowe, and Tonya R. Crowe are hereby **DISMISSED** from this lawsuit, and the Court **DIRECTS** the Clerk to remove them as Defendants in this case; (2) Counts II, V, VI, VII, and VIII are **DISMISSED**.

**IT IS SO ORDERED** this 13th day of August, 2021.

/s/ Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

39