# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith  
Clerk of Court

For rules and forms visit  
www.ca11.uscourts.gov

August 22, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 22-12817-HH  
Case Style: J.I. v. Barrow County School System, et al  
District Court Docket No: 2:20-cv-00087-SCJ

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at [www.ca11.uscourts.gov.](www.ca11.uscourts.gov.)

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-12817

Non-Argument Calendar

_____

J.I.,

                                                       Plaintiff-Appellant,

*versus*

BARROW COUNTY SCHOOL SYSTEM, et al.,

                                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:20-cv-00087-SCJ

_____

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 4 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 2 of 12

2                    Opinion of the Court                  22-12817

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

J.I. alleges that, when she was seventeen, Clayton Crowe, one of her high school classmates, sexually assaulted her at an outdoor field-day event hosted by their school. Over two years after she turned eighteen, J.I. filed suit against several parties, bringing a state law negligent supervision claim and federal claims under Title IX and 42 U.S.C. § 1983. The district court entered summary judgment against J.I. on her federal claims, ruling that they are time barred by the statute of limitations. The district court also granted judgment on the pleadings on her negligent supervision claim. The court determined that claim was also time barred when ruling on J.I.'s motion for reconsideration. J.I. argues on appeal that she suffered from mental incapacity following the assault, and the statute of limitations for her federal claims tolled by reason of that incapacity. J.I. also challenges the district court's grant of judgment on the pleadings on her negligent supervision claim. But she does not argue that the district court erred in ruling that claim is time barred. After careful review, we affirm.

### I.

During the 2016-2017 school year, J.I. and Crowe were students at Apalachee High School. On October 7, 2016, their school hosted an outdoor field-day event called "Chee Fest" as a reward for students. Chee Fest spanned the school's grounds—some games were in the gym, and others were on the sports fields. A

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 5 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 3 of 12

22-12817                Opinion of the Court                3

school resource officer, faculty (including eighty-two teachers), and staff volunteered to help supervise Chee Fest.

That day, Principal Jennifer Martin and Assistant Principal Angela Boyd were roving the premises and observing the school's track and nearby bleachers. Martin received a phone call from a volunteer, who said that she and other volunteers had "found two students having sex" behind the baseball field, and that they "ha[d] the two students." The two students were J.I. and Crowe. Martin and Boyd met the group of teachers, J.I., and Crowe on their way to the school's main office.

Martin gathered information from teachers who witnessed the incident and from students who had been in the area. Crowe wrote a statement, which he revised at Martin's direction because his initial draft was a single sentence. The school's counselor, Amy Bishop, spoke with J.I. She was "really upset and was having trouble focusing." She told Bishop that Crowe raped her.

As part of her preliminary investigation, Martin concluded that J.I. had willingly decided to meet Crowe behind the baseball field. So Martin assigned both students to two days of out-of-school suspension for being "out of assigned area" during Chee Fest. J.I. was allowed to return to school on October 19, 2016. But she did not do so; she was uncomfortable going back. Crowe was not permitted to return to Apalachee High School.

On the first school day after the incident, Bishop went to J.I.'s home for a welfare check and to deliver her school assignments. Because J.I. was not comfortable returning to school, the

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 6 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 4 of 12

4                    Opinion of the Court                    22-12817

school continued to send her assignments to her home. The school system provided home-based educational services to J.I. for the rest of that school year.

Under the school system's Title IX policies, Martin reported the incident to Dr. Kenneth Greene, the Title IX investigator for the school system. Dr. Greene initiated an investigation. He observed forensic interviews taken by the Barrow County Sheriff's Office, conducted his own interviews, reviewed evidence that Martin submitted, and documented all investigative actions in his file.

Dr. Greene concluded that J.I. and Crowe "willingly went behind the baseball stadium, and that there was sexual activity, and it was unwelcomed [and] unwanted [by J.I.]." Dr. Greene applied a preponderance of the evidence standard and concluded that J.I. did not intend or consent to having intercourse with Crowe.

Dr. Lawanda Harmon, a licensed psychologist, treated and observed J.I. after the incident. She used those treatment sessions and J.I.'s medical records to develop clinical opinions about her mental capacity. Dr. Harmon determined that "[a]s a direct result of the sexual assault," J.I. suffered from depression, post-traumatic stress disorder, an increased level of histrionic personality disorder, and increased symptoms from her preexisting attention-deficit/hyperactivity disorder. Dr. Harmon found that J.I.'s "diagnoses have rendered her mentally and physically incapable of managing the ordinary affairs of her life." J.I. required "direct assistance from her mother" for self-care; she did not "bathe and take her daily

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 7 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 5 of 12

22-12817               Opinion of the Court                5

medications without prompting and direction." Dr. Harmon also found that J.I. did not "manage her financial affairs independently."

Before the incident, J.I. enjoyed dancing at church, participating in Girl Scouts, and shopping with her mom. J.I. testified that she could not engage in these activities during her senior year. Still, at her psychiatrist's suggestion, J.I. returned to Apalachee High School for her senior year. J.I. testified that she typically received "A's, B's, [and] sometimes C's" in her classes. During her senior year, J.I. kept in touch with her biological family, who she had reconnected with earlier in high school. In addition, J.I. maintained social media accounts and developed friendships. She graduated from high school with a general education diploma.

After the incident and before filing this lawsuit, J.I. held several jobs and pursued higher education. In 2017, when she was eighteen, J.I. worked as a teacher's assistant at a daycare for about three months before resigning to focus on school. J.I. also worked at a Taco Bell for about a year. Though her mother helped fill out the application, J.I. interviewed for the position and kept track of her work schedule, which changed weekly. She left that job because her coworkers repeatedly asked her for money. After graduation, J.I. attended Lanier Technical College for about a year—August 2018 to May 2019—because she wanted to be a teacher. But she withdrew due to the workload—it was difficult for her to "stay on track." In November 2019, J.I. started working as a teacher's assistant at a daycare. She was in that role until the COVID-19

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 8 of 14
USCA11 Case: 22-12817    Document: 67-1    Date Filed: 08/22/2023    Page: 6 of 12

6                    Opinion of the Court                    22-12817

pandemic began. She was let go because "there were no children at the day care at the time."

At the time of the incident, J.I. was seventeen. She turned eighteen years old on August 11, 2017. A few months later, on November 6, 2017, her counsel sent an ante litem notice to the Barrow County School System and other potential defendants. J.I. was twenty years old when she filed this lawsuit on March 27, 2020.

Relevant to this appeal, J.I. asserted Title IX and Section 1983 claims against the Barrow County School System, Superintendent Chris McMichael, Principal Jennifer Martin, and Assistant Principal Angela Boyd (collectively, the Barrow Defendants). She also brought a negligent supervision claim against Clayton Crowe's parents, Tonya and Keith Crowe (the Crowe Defendants).

## II.

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242 (11th Cir. 2001). Summary judgment is appropriate if the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, we resolve all reasonable inferences in favor of the non-moving party. *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1253-54 (11th Cir. 2010).

We review the district court's denial of a motion for reconsideration for abuse of discretion. *Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003).

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 9 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 7 of 12

22-12817               Opinion of the Court                7

### III.

In this appeal, J.I. contends that the district court erred in granting summary judgment in the Barrow Defendants' favor. She argues that the district court should have determined that her mental incapacitation following the assault tolled the statute of limitations for her claims. She also contends that the district court erred in granting judgment on the pleadings on her negligent supervision claim and denying her motion for reconsideration of that ruling. We take each argument in turn.

### A.

The district court entered summary judgment in the Barrow Defendants' favor, ruling that J.I.'s Section 1983 and Title IX claims are time barred. We agree.

The statute of limitations for Section 1983 claims "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Accordingly, a two-year statute of limitations applies to J.I.'s Section 1983 claims under Georgia law. *See* O.C.G.A. § 9-3-33 ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues . . . ."). Title IX claims are subject to the same two-year statute of limitations. *See M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999). For a person under the age of eighteen when her claim accrues, the statute of limitations tolls until she turns eighteen. O.C.G.A. § 9-3-90(b).

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 10 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 8 of 12

8                    Opinion of the Court                    22-12817

Although J.I. had two years from her eighteenth birthday to bring her Section 1983 and Title IX claims, J.I. filed her complaint on March 27, 2020—seven months after her twentieth birthday. She does not contest that she filed her claims late. Instead, she contends the statute of limitations for her claims should have further tolled because of her mental incapacity stemming from the alleged assault.

Under Georgia law, statutes of limitations are tolled for the claims of "[i]ndividuals who are legally incompetent because of intellectual disability or mental illness." O.C.G.A. § 9-3-90(a). And if a person begins suffering from such a disability "after [her] right of action has accrued . . . the limitation applicable to [her] cause of action shall cease to operate during the continuance of the disability." *Id.* § 9-3-91. The statutes "make plain" that tolling "is confined to situations where it is not fair to charge a suitor with the running of the clock, because of [her] mental condition." *Martin v. Herrington Mill, LP*, 730 S.E.2d 164, 166 (Ga. Ct. App. 2012) (alteration in original) (quoting *Carter v. Glenn*, 533 S.E.2d 109, 114 (Ga. Ct. App. 2000)). It becomes unfair to run the clock on a person's claims when that person is "so unsound in mind, or so diminished in intellectual capacity that she is incapable of managing the 'ordinary affairs of life.'" *Id.* (quoting *Carter*, 533 S.E.2d at 114). Accordingly, a diagnosis of mental illness, by itself, will not suffice. Georgia courts have held "that diagnoses of depression, despondency, borderline personality disorder, and even PTSD, *without additional evidence that a plaintiff was unable to manage the ordinary business of life*, are mental conditions that fall short of the applicable legal standard

of incompetence and, thus, are insufficient to trigger the tolling provisions of O.C.G.A § 9-3-90." *Id.* at 167.

Juries ordinarily resolve the issue of a person's mental capacity. *See Tri-Cities Hosp. Auth. v. Sheats*, 273 S.E.2d 903, 905 (Ga. Ct. App. 1980). But a court may decide as a matter of law that a litigant did not suffer from mental incapacity that made her unable to manage her ordinary business if no genuine issues of material fact exist in the record. *See Martin*, 730 S.E.2d at 166. J.I. bears the burden of proving her mental incapacity prevented her from managing her own affairs. *See id.*

Before the assault, J.I. "suffered from" ADHD and "cognitive deficits." She was eligible for special education services and an individualized education program. After the assault, Dr. Harmon, one of J.I.'s therapists, diagnosed her with "Posttraumatic Stress Disorder, Depression, an increased level of Histrionic Personality Disorder, and a high level of fear and codependency."

Despite her diagnoses, the record does not support an inference that J.I. "was unable to manage the ordinary business of life." *Id.* After the incident, she returned to school for her senior year. She generally received "A's, B's, [and] sometimes C's" in her classes. J.I. kept in touch with her biological family and stayed active on social media. After she received her GED, she enrolled in Lanier Technical College for a full school year to pursue teaching. J.I. opened a bank account in her own name. And she held multiple jobs. Though her mother helped with at least one of the

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 12 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 10 of 12

10                    Opinion of the Court                22-12817

employment applications, J.I. kept track of her shift schedules, cared for children, and worked without disability accommodations.

Further, J.I.'s mother retained counsel for J.I. a few months after she turned eighteen—long before the two-year statute of limitations expired. J.I.'s mother may have arranged for J.I.'s representation, but the attorney affirmatively stated he represented J.I. And because J.I. has never been subject to a guardianship or conservatorship, she must have agreed to representation and given informed consent about material aspects of her case.

Courts may also "rel[y] upon the testimony that was given by a plaintiff as to his or her own mental soundness or unsoundness." *Branch v. Carr*, 396 S.E.2d 276, 277 (Ga. Ct. App. 1990). Likewise, courts may consider testimony of others, like psychiatrists, therapists, and social workers. *See, e.g.*, *Martin*, 730 S.E.2d at 167-68 (weighing a social worker's testimony). But professionals' opinions and findings are not dispositive: a plaintiff's testimony or the professional's own testimony can rebut a clinical opinion that a plaintiff is mentally unsound. *Id.*

One of J.I.'s therapists stated that she "has a high level of fear which has incapacitated her ability to manage the ordinary affairs of her life," including "an inability" to care for herself "without direct assistance from her mother." But the rest of the record—including J.I.'s own testimony—undermines that statement. J.I. testified that the only activities she could not undertake after the incident that she pursued before were dancing, scouting, and

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 13 of 14
USCA11 Case: 22-12817   Document: 67-1   Date Filed: 08/22/2023   Page: 11 of 12

22-12817               Opinion of the Court                    11

shopping. Asked whether J.I. was incapable of certain activities after the incident, her mother responded that J.I. is "not motivated" to "go shopping," "keep[] her own personal hygiene together," or "mak[e] her bed." Ability and motivation are distinct issues. And generalized statements about J.I.'s abilities to shop, maintain her hygiene, and make her bed do not carry enough weight to create a genuine issue of material fact in the face of a mountain of evidence that she attended school, pursued a career, managed her finances, cared for others, and otherwise kept track of her affairs. No reasonable jury could find that J.I. was *incapable* of handling her affairs. *See Martin*, 730 S.E.2d at 166.

Because J.I. cannot satisfy the standard to establish further tolling of her Title IX and Section 1983 claims, the district court properly granted summary judgment to the Barrow Defendants on the ground that those claims are barred by the statute of limitations.

*B.*

J.I. also contends the district court erred in granting judgment on the pleadings for the Crowe Defendants on her negligent supervision claim. Moreover, J.I. argues that the district court erred by denying her motion for reconsideration of that ruling. When ruling on her motion for reconsideration, the district court determined that, merits aside, the statute of limitations bars that claim too. Although J.I. acknowledges the district court's statute of limitations ruling, she makes no argument in her opening brief that it

Case 2:20-cv-00087-SCJ   Document 160   Filed 08/22/23   Page 14 of 14
USCA11 Case: 22-12817    Document: 67-1    Date Filed: 08/22/2023    Page: 12 of 12

12                      Opinion of the Court                    22-12817

was incorrect. She argues only that she satisfied the pleading requirements for the negligent supervision claim.

By failing to argue the district court's statute of limitations ruling on appeal, J.I. has abandoned any challenge to that dispositive ruling. *See United States v. Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001 ("[O]ur well established rule is that issues and contentions not timely raised in the briefs are deemed abandoned."). J.I.'s failure to challenge the district court's dispositive ruling on her negligent supervision claim necessitates that we affirm the district court's judgment for the Crowe Defendants on that claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

But, even if J.I. had challenged the district court's statute of limitations ruling, we would affirm for the same reasons that we conclude the statute of limitations bars J.I.'s federal claims against the Barrow Defendants.

### IV.

For these reasons, the district court is **AFFIRMED**.